# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES EARL NEWTON,         )
                                 )
          Plaintiff,       )
                                 )
        v.                  )               1:22CV388
                                 )
DEAN LOCKLEAR, et al.,       )
                                 )
          Defendants.    )

## ORDER, MEMORANDUM OPINION, AND RECOMMENDATIONOF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Plaintiff James Earl Newton's ("Plaintiff") Motion for Partial Summary Judgment (Docket Entry 46); Defendants Dean Locklear, Shawn Britt, Twankeish Clark, Travis R. Bridges, Adam Sayre, Timothy Locklear ("T. Locklear"), Brian Bradley, Deven Wallace, Triston J. Dial, and Jose L. Osuna's (collectively "Defendants") Motion for Summary Judgment (Docket Enty 53), Defendants' Motion for Leave to File Video Exhibit Manually (Docket Entry 55); and "Plaintiff's Request to Grant Plaintiff's Motion for Partial Summary Judgment" (Docket Entry 57). For the reasons stated below, the undersigned grants Defendants' Motion for Leave to File the Video Exhibit Manually. Further, the undersigned recommends granting Defendants' Motion for Summary Judgment and denying Plaintiff's motions for Partial Summary Judgment.

# I.     Background

Plaintiff brings claims under 42 U.S.C. § 1983 against Defendants in both their official and individual capacities surrounding an alleged excessive force incident that occurred on June 16, 2021, at the Scotland Correctional Institution.  (*See* Am. Compl., Docket Entry 8 at 4.)[1] Specifically on that morning, Defendants T. Locklear and Bradley allegedly gave Plaintiff "the wrong food tray," which subsequently "fell on the floor."  (*Id.* at 14.)  Defendants Britt and Clark thereafter arrived, and Defendant Britt "told the Plaintiff to submit to the handcuffs," but he refused "out of fear of being assaulted."  (*Id.*)  As a result, the water to Plaintiff's cell was turned off.  (*Id.*)

Plaintiff alleges that he then "started a small fire in the corner of the cell door then put it out with a cup of water."  (*Id.*)  Defendants T. Locklear, Sayre, Bradley, Wallace, Dial, Osuna, Clark and Bridges procured a fire extinguisher and stood in front of Plaintiff's cell.  (*Id.*) Plaintiff then asked about being handcuffed, which Defendant Bradley stated, "it's too late for that." (*Id.*)

Plaintiff then placed his mattress against the cell wicket door to avoid being pepper sprayed.  (*Id.*)  Defendant Sayre, however, pushed the mattress with his baton so that Defendant Wallace could discharge the fire extinguisher through the opening of the wicket door although there was no fire at this point.  (*Id.*)  Plaintiff told Defendants he could not breathe and asked to be handcuffed, which another offender heard.  (*Id.* at 14-15.)  An officer laughed, then Defendant Clark told Defendant Wallace "that was enough."  (*Id.* at 15.)

---

[1] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

After Plaintiff's cell door opened, he dropped the mattress and "balled up on the bunk in a fetal position as Defendants Sayre, [Dial], [O]suna, Wallace and Bradley rushed in and began to beat" Plaintiff. (*Id.*) Defendants Wallace and Bradley both beat him with batons, but Defendant Wallace specifically struck Plaintiff in the head with a heavy blow. (*Id.*) During the beating, Defendants Clark and Bridges "did not intervene to prevent these kicks and blows" and may have also participated in the beating. (*Id.*) Defendant T. Locklear also hit Plaintiff. (*Id.*) Afterwards, Defendants Sayre and T. Locklear handcuffed Plaintiff and removed him from the cell, at which point, Plaintiff "reached inside his shorts and dropped a homemade weapon on the floor," which Defendant Sayre picked up. (*Id.*) While walking in the hallway and in the presence of Defendant Britt, Plaintiff stated that he was hit in the head with a baton by Defendant Wallace. (*Id.*) Defendant Britt replied, "that's the beautiful tools the state gave us to work with." (*Id.*)

After the incident, Plaintiff alleges that he was taken to main medical, then "outside medical," for his head laceration. (*Id.* at 17.) He suffered a concussion, had to get four staples in his head, and had a contusion in his upper right rib cage. (*Id.*) Plaintiff also claims he suffers from "migraines, dizzy spells and short-term memory loss" as a result of the incident. (*Id.*) He further asserts that he has exhausted all administrative remedies and attached a copy of his grievance forms to his Amended Complaint. (*See id.* at 6-7, 19-29.)

Plaintiff requests relief in the form of a declaratory judgment stating that Defendants Clark, Bridges, T. Locklear, Wallace, Bradley, Sayre, Osuna, and Dial violated his rights, Defendant Dean Locklear failed to prevent physical abuse of prisoners, and that Defendant Britt ordered the beating. (*Id.* at 17.) He also requests an evaluation by a "medical practitioner

with expertise in the treatment of head trauma," along with compensatory and punitive damages. (*Id.* at 18.)

After discovery, Plaintiff moved for partial summary judgment as to the issue of liability on the part of Defendants' alleged use of excessive force and failure to intervene. (Docket Entry 46.) Along with a brief in support of his motion, Plaintiff filed a declaration on his own behalf, medical records, and records and policies maintained by the North Carolina Department of Adult Correction ("NCDAC").[2] (*See* Declaration in Support of Pl.'s Mot. for Partial Summary Judgment ("Newton Decl."), Docket Entry 47; *see also* Docket Entry 48 at 5-35.) In his declaration, Plaintiff reiterates that he was assaulted by prison staff on June 16, 2021, which required outside medical treatment for his injuries. (Newton Decl. ¶¶ 2-3.) He also reiterates that he set the fire in his cell but put it out before Defendants arrived. (*Id.* ¶ 5.) Pointing then to the related incident reports, Plaintiff declares that "Defendant Sayre stated . . . there was no fire before prison staff entered the cell" and that video footage shows "there is no visible fire" before Defendants come into the cell. (*Id.* ¶¶ 8-9.) Plaintiff further states that video evidence reveals that Defendants Clark and Bridges entered the cell with other Defendants, and that they failed to intervene to stop the assault despite the opportunity to do so. (*Id.* ¶ 11.) Last, Plaintiff states that the weapon he had which was tossed on the floor while being escorted away is the same weapon Defendants "alleged they retrieved inside the

---

[2] Plaintiff also filed a statement of what he believes is undisputed facts. (*See* Docket Entry 49.)

cell to justify the unnecessary excessive use of force that was exercised as punishment." (*Id.* ¶ 12.)[3]

Defendants also moved for summary judgment, arguing that there are no genuine issues of material fact and that they are entitled to prevail as a matter of law as to all claims against them. (Docket Entry 53.) Along with a brief in support of their motion, Defendant Dean Locklear filed a declaration. (*See* Declaration of Dean Locklear ("Dean Locklear Decl.", Docket Entry 54-1.) In addition, attached to Dean Locklear's declaration is video footage surrounding the alleged incident and records maintained by the NCDAC[4] regarding Plaintiff. (*See* Docket Entries 54-2 through 54-7.)[5] Defendants also filed the declaration of Amy

---

[3] In his brief and declaration, Plaintiff frequently references "video footage;" however, he does not submit such video footage. (*See* Newton Decl. ¶ 14 ("All exhibits are attached . . . except Exhibit A (video footage) because I am a prisoner.").)

[4] Many of Plaintiff and Defendants' records are redundant.

[5] Defendants filed a Motion for Leave to File the Video Exhibit Manually (Docket Entry 55), which the undersigned will grant. Plaintiff filed a letter with the Court, arguing alteration and/or tampering of the restricted housing video by defense counsel. (*See* Docket Entry 61.) Defendants filed a response contending that there had been no alterations and "Defendants' narrative description provided within Defendants' Memorandum in Support indicates the time and events Plaintiff claims were edited out of the video he saw on July 25, 2024, but which he did see in the video from April." (Docket Entry 62 at 4.) In addition, defense counsel filed a declaration that a copy of the video evidence was sent to the Court, and a copy was sent to the facility where Plaintiff is housed without any edits or modifications from counsel. (*See* Declaration of Counsel, Docket Entry 62-1.) Both parties filed additional responses. (Docket Entries 66, 67.) Upon review of the documents and the video footage, there is no reason to believe there has been any alteration of the evidence. From the Court's copy, the portions of which Plaintiff complains have been omitted—the mattress blocking the cell door upon opening, and Plaintiff appearing to reach into his shirt/waist area and toss an item on the floor—have not only been observed in the video footage, but as Defendants state, were part of their video narrative summary in the memorandum in support originally filed with the Court (*see* Docket Entry 54 at 5). Further, the video size of the Court's copy is consistent with the file size noted by defense counsel. (*See* Counsel Declaration ¶ 4; *see also* Docket Entry 67.) Therefore, Plaintiff's assertions that defense counsel tampered or edited this video are unsupported, and his related request for appointment of counsel is not warranted. *See Curry v. Dick*, No. 1:22CV70 (LMB/IDD), 2023 WL 4002476, at *4 n.8 (E.D. Va. June 14, 2023) ("[P]laintiff appears to believe that the video tape submitted by Deputy Storrs has been somehow altered, . . . but the video presented to the Court does

LaRosa, medical records custodian for the NCDAC, who attached Plaintiff's medical records from June 16, 2021, to June 30, 2021. (*See* Declaration of Amy LaRosa ¶ 2, Docket Entry 54-8 (and attachments).)

In pertinent part, Defendant Dean Locklear attests that he was not personally involved in the alleged use of force incident; instead, as Associate Warden V, he has custody and control over incident reports at the prison. (Dean Locklear Decl. ¶ 3.) Defendant Dean Locklear does not personally know Plaintiff, and states that he did not act outside of a supervisory role regarding the incident. (*Id.* ¶¶ 3-4.) The incident reports[6] conclude that the force used was "minimal and justified to achieve a corrections objective." (*Id.*) Plaintiff was charged with disciplinary infractions for possessing a weapon and starting a fire. (*Id.*; *see also* Docket Entry 54-6.) Specifically, the incident reports reflect that on the day of the incident, Plaintiff rejected and threw down his food tray, then started a fire in his cell. (Docket Entry 54-2 at 3; Docket Entry 54-3 at 1-2.)[7] Smoke was observed coming from the cell, and several officers responded,

_____

not possess the characteristics he alleges."); *Harvey v. Landauer*, No. 7:18-CV-00097, 2020 WL 1904458, at *3 (W.D. Va. Apr. 17, 2020) ("[The plaintiff's] naked and speculative assertion that defendants or their counsel tampered with the [video clips], absent any additional information or proof supporting that assertion, is insufficient to refute defendants' sworn allegations or counsel's representations to the court as officers of the court."); *Harris v. Faulcon*, No. 3:23CV149, 2024 WL 4712695, at *2 (E.D. Va. Nov. 7, 2024) ("[The plaintiff] insists that Defendant Faulcon, somehow, edited the video evidence. . . . Th[e] examination [of the evidence] reveals that [the plaintiff's] challenge to the video evidence is frivolous.").

[6] The first report appears to be initiated due to the alleged incident on June 16, 2021. (*See* Docket Entry 54-2.) The second incident report has a "Reported by Time" of July 12, 2021, and reflects a summary of an additional investigation into the June 16, 2021 incident after Defendant Dean Locklear's receipt of a letter concerning Plaintiff's allegations of use of force. (*See* Docket Entry 54-3 at 1.)

[7] According to Plaintiff's verbal statement within one report, Defendant Britt went to Plaintiff's cell to find out what the issue was with Plaintiff's food tray, but after seeing the tray on the floor, Defendant Britt "refused to replace the tray." (Docket Entry 54-3 at 1.)

6

including Defendants Clark, Bridges, Sayre, T. Locklear, Bradley, Wallace, Dial, and Osuna. (Docket Entry 54-2 at 1-4; Docket Entry 54-3 at 2-4.) With a fire extinguisher, officers made efforts to spray inside the cell, but they were hindered because Plaintiff blocked the wicket door with his mattress. (*Id.*)[8] Plaintiff was given several direct orders to submit to handcuffs but refused. (*Id.*) The cell door was then ordered to be opened, and there was low visibility due to the smoke in the cell. (*Id.*) Plaintiff became combative and officers observed a homemade weapon in his hand. (*Id.*) Hands-on force was used to retrieve the weapon and to restrain Plaintiff with handcuffs. (*Id.*) Plaintiff was subsequently escorted to receiving and searched. (*Id.*) He was then assessed by prison medical staff and referred outside the facility for medical treatment and further evaluation. (Docket Entry 54-2 at 1-4, 8; Docket Entry 54-3 at 8.)

Defendants also attach Plaintiff's disciplinary infraction history and incarceration summary, the former which notes that he is currently serving a sentence for manslaughter with a criminal history including arson and possession of a firearm by felon. (Docket Entry 54-7.) Plaintiff has incurred many prison infractions, including multiple infractions for possessing weapons, assaultive behavior, and threatening to injure staff. (Docket Entry 54-6.)

Defendants have also submitted soundless video footage in support of their motion. The first video is of the restricted housing East D Unit where Plaintiff's cell was located. For several minutes, an officer is observed inside the gated area near the prisoner cells on the first

---

[8] The prison officers' statements each generally summarize unsuccessful and hindered efforts to extinguish the fire in Plaintiff's cell. To the extent their stories slightly deviate on this point, it is immaterial and nothing more than a distinction without a difference.

floor of the unit.[9]  (Housing Unit video at 00:00-06:49.)  An officer then enters and opens the gate, followed by seven other officers, approaching the cells in the bottom-right corner.  (*Id.* at 06:49-07:39.)  An inmate is escorted out of a cell near Plaintiff's, and other officers thereafter enter the area in front of Plaintiff's cell, one with a fire extinguisher.  (*Id.* at 07:48-09:15.)  The officers appear to discharge the fire extinguisher towards the cell's wicket door as the area in front of Plaintiff's cell gets cloudy.  (*Id.* at 09:15-09:52.)  One officer appears to shove a baton towards the cell's wicket door.  (*Id.* at 09:27-09:47.)  The extinguisher is placed on the ground while officers are still standing in front of Plaintiff's cell door. (*Id.* at 09:54-10:23.)  An officer picks the extinguisher back up, and the cell door is subsequently opened with Plaintiff's mattress blocking the entry.  (*Id.* at 10:25-10:44.)  A cloud of smoke departs the cell as officers enter and one officer kicks what appears to be a burned pile of items from the cell as he exits. (*Id.* at 10:44-11:00.)  Additional officers exit, and moments later, Plaintiff exits the cell in handcuffs.  (*Id.* at 11:00-11:37.)  Prior to exiting the gated area to the cell block, Plaintiff appears to reach into his shirt and toss an item on the floor, which the escorting officer slides under his foot and another officer then picks up the item.  (*Id.* at 11:38-11:51.)  Additional officers then exit Plaintiff's cell, one with a baton in his hand.  (*Id.* at 11:51-12:12.)

The second video is of the intake processing area where officers escort Plaintiff in handcuffs through the area. (Intake Area video at 00:00-00:12.)  Several officers remain in the area, with one officer placing an object in a napkin and another officer holding it.  (*Id.* at 00:13-01:21.)  Plaintiff eventually reenters the area and walks through the metal detector before receiving further instruction by officers.  (*Id.* at 02:36-03:07.)  Several minutes later, Plaintiff

---

[9] Another individual is sitting to the far-left door of the unit.

in handcuffs and escorted by officers, reenters the area and exits through a door. (*Id.* at 06:21-06:36.)

## II. DISCUSSION

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met their burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear their burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the Court need not consider "unsupported assertions" or "self-

serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

## Defendants' Motion for Summary Judgment

### A. Excessive Force

Defendants argue that the excessive force claims against them should be dismissed because it is undisputed that there is no objectively serious injury, Defendants acted in a good-faith effort to maintain control, and Defendants did not act maliciously or sadistically in the process. (Docket Entry 54 at 7-16.) "The Eighth Amendment protects prisoners from unnecessary and wanton infliction of pain." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (internal quotations and citation omitted). Prison officials have "an affirmative obligation to take reasonable measures to guarantee [inmates'] safety." *Id.* (internal quotations and citation omitted). Accordingly, when evaluating an excessive force claim, the Court "must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). To make this determination, the Court considers two elements: "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (internal quotations and citation omitted).

10

The objective component:

> focuses not on the severity of any injuries inflicted, but rather on "the nature of the force," which must be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (citing *Hudson*[, 503 U.S. at 7]); *cf. Wilkins*, 559 U.S. at 37 (explaining that the extent of injury suffered may indirectly "provide some indication of the amount of force applied"). Not every "malevolent touch by a prison guard" is necessarily a constitutional violation. *Hudson*, 503 U.S. at 9. The Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 10 [internal quotation and citation omitted].

*Garris v. Gober*, No. 1:10-CV-504, 2013 WL 4502261, at *1 (M.D.N.C. Aug. 22, 2013), *aff'd*, 554 F. App'x 211 (4th Cir. 2014). In other words, "there is no 'significant injury' threshold to sustain an excessive force claim because a de minimis injury, if the product of malicious and sadistic use of force, can sustain the claim." *Parker v. Stevenson*, 625 F. App'x 196, 198 (4th Cir. 2015) (quoting *Wilkins*, 559 U.S. at 37-38).

As for the subjective component, "[t]he state of mind required in excessive force claims is 'wantonness in the infliction of pain.' " *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). The Supreme Court has considered four non-exclusive factors to assist courts in determining wantonness conduct: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Id.* (citing *Whitley*, 475 U.S. at 321) (internal quotations omitted). "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such

11

wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. In reviewing the record, "[i]f a reasonable jury could find . . . that correctional officers used force maliciously to punish or retaliate against an inmate, then summary judgment is not appropriate." *Dean v. Jones*, 984 F.3d 295, 302-03 (4th Cir. 2021).

In the prison context, "[c]orrections officers act with a permissible motive not only when they confront immediate risks to physical safety, but also when they attempt to preserve internal order by compelling compliance with prison rules and procedures." *Freeman v. Deas*, No. 20-7345, 2023 WL 8230805, at *2 (4th Cir. Nov. 28, 2023) (quotations and citation omitted); *see also Boose v. Adkins*, No. 3:18-cv-1480, 2020 WL 3086885, at *13 (S.D. W. Va. May 20, 2020) (explaining that "[c]ourts in this Circuit have routinely held that law enforcement and correctional officers may deploy force in response to threatening, disruptive, or assaultive behavior") (collecting cases), *report and recommendation adopted*, No. CV 3:18-1480, 2020 WL 3078333 (S.D. W. Va. June 10, 2020). In addition, courts "owe officers 'wide-ranging deference' in their determinations that force is required to induce compliance with policies important to institutional security." *Brooks v. Johnson*, 924 F.3d 104, 113 (4th Cir. 2019); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.")).

Here, considering the facts in the light most favorable to Plaintiff, and considering the *Whitley* factors, there is no genuine issue of material fact as to whether the use of force by Defendants during the June 16, 2021, incident was excessive. As summarized above, video footage from the prison captures portions of the incident but does not show inside Plaintiff's cell where the alleged excessive force occurred. Also, the parties dispute many of the facts. Nevertheless, the record reflects that Defendants acted in a good-faith effort to maintain and restore discipline, rather than maliciously or sadistically to cause harm.

Specifically, Plaintiff's own allegations admit that because of his displeasure about his food tray, he did not comply with orders and instead set a fire in his cell. Beyond that, the record reflects that the officers made efforts to spray inside the cell, but they were hindered because Plaintiff blocked the wicket door with his mattress, and that Plaintiff possessed a homemade weapon. Defendants needed to restore order upon facing an emergency and dangerous situation in which Plaintiff, with a violent history, had himself created. Within about a minute from entering Plaintiff's cell, Plaintiff was extracted and in the control of officers. Here, "[t]he officers were entitled to use the force necessary to get Plaintiff under control and extract Plaintiff safely from his cell." *Davidson v. Davis*, No. 3:13-CV-590-FDW, 2016 WL 206478, at *4 (W.D.N.C. Jan. 15, 2016). In addition, while a de minimis injury is not dispositive, the minor injuries Plaintiff sustained indicate that the use of force was not excessive but rather necessary to gain control over Plaintiff. *See McCall v. Div. of Corr.*, No. CV PX-22-913, 2023 WL 2537542, at *3 (D. Md. Mar. 16, 2023) (inmate, who set fire to his cell, "sustained minor injuries consistent not with excessive force, but with a force necessary to gain control over a volatile and dangerous inmate"); *Cox v. Gaskins*, No. 501CT936H, 2003

13

WL 23857306, at *2 (E.D.N.C. May 30, 2003) (plaintiff who "suffered two lacerations to his head and an injury to his nose" experienced "nothing more than *de minimis* injuries"), *aff'd*, 78 F. App'x 310 (4th Cir. 2003); *see also Geddings v. Roberts*, No. 1:15CV264, 2018 WL 1626116, at *12 (M.D.N.C. Mar. 30, 2018) (Biggs, J.) ("[T]he record shows that the extent of Plaintiff's injuries were relatively minor . . . Although . . . Plaintiff's injuries are sufficient to satisfy the objective component of the Eighth Amendment analysis, they are not, in themselves, sufficient to weigh in Plaintiff's favor in the subjective determination.").

Plaintiff fails to present sufficient evidence to survive summary judgment. First, to the extent Plaintiff argues that Defendants failed to produce discovery requests (Docket Entry 65 at 1), Plaintiff never properly sought to compel its production during discovery, nor is there any reason to permit such at this time.[10]  *See* Rule 56(d) (setting forth grounds to warrant additional discovery during summary judgment stage); *Evans*, 80 F.3d at 961 ("[T]he nonmoving party cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery . . . before the district court ruled."). Second, Plaintiff argues that the video footage has been altered. (Docket Entry 65 at 2.) As previously stated, this argument fails. (*See* supra n.5; *see also Forbes v. Wal-Mart Stores, Inc.*, No. 222CV02398BHHMHC, 2023 WL 4409922, at *1 n.3 (D.S.C. June 14, 2023) ("Plaintiff's mere assertion that the video was

---

[10] Plaintiff filed a letter document with the Court in early July 2024 referencing some discovery requests that he was seeking from defense counsel. (*See* Docket Entry 52.) This was well beyond the April 15, 2024, discovery deadline. (*See* Docket Entry 40 at 13 (setting new discovery deadline).) Moreover, Plaintiff does not explain how the discovery sought would aid in opposing Defendants' summary judgment motion. (*See* Docket Entry 65 at 1.) For example, to the extent Plaintiff relies on other inmate's statements about his request to be handcuffed (*id.* at 4), it would not alter the recommendation herein.

14

'edited' is not enough to throw the authenticity of the video into question, nor does it create a genuine issue of material fact that would preclude summary judgment."), *report and recommendation adopted*, No. 2:22-CV-2398-BHH, 2023 WL 4409052 (D.S.C. July 7, 2023)).

Beyond that, Plaintiff points to several other things which he believes supports his claim that Defendants engaged in excessive force: Defendants' "nonchalant" responsive nature to the incident and the lack of fire in the cell upon their entrance; Defendants and other prison officials' violation of prison policy by not obtaining a video recorder during incidents involving use of force; smoke in the video from the discharge of the fire extinguisher rather than from Plaintiff's cell; officers seen with batons exiting the cell; Plaintiff asking to be handcuffed; and Plaintiff tossing a weapon after leaving the cell. (Docket Entry 65 at 2-4.) However, none of this refutes that Defendants acted in a good-faith effort to maintain and restore discipline under the totality of the circumstances. To some extent, the video evidence "'quite clearly contradicts [some portions of] the version of the story told by [Plaintiff] ... so that no reasonable jury could believe it, [thus, the C]ourt should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Witt v. W. Va. State Police, Troop 2,* 633 F.3d 272, 276 (4th Cir. 2011) (citing *Scott v. Harris,* 550 U.S. 372, 378, 380 (2007)); *see also Bostic v. Rodriguez,* 667 F. Supp. 2d 591, 605 (E.D.N.C. 2009) (citation omitted) ("[T]o the extent plaintiffs' recollection and the video are inconsistent, the video 'speak[s] for itself,' and the court considers the facts as displayed in the video."). Moreover, a "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation." *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013). "Therefore, any failure by prison officials to follow [NCDAC]

15

policies is insufficient, without more, to support [Plaintiff's] claim[s]." *Id.* at 358; *King v. Riley*, 76 F.4th 259, 267 (4th Cir. 2023) ("Not every violation of prison policy is a violation of the constitution.").

Even more important, while Plaintiff contends that the homemade weapon he retrieved from his waistband and tossed while being escorted outside the gate discredits Defendants' claim that use of force was necessary inside the cell, the undersigned finds this argument unpersuasive. Indeed, Plaintiff does not dispute that he possessed a weapon during the incident. Thus, adopting his version, Plaintiff continued to possess a weapon upon exiting his cell and while being escorted by prison officials, thereby demonstrating a serious risk of danger to himself, other inmates, and the prison officials. *See McMillan v. C. Jones*, No. 5:14-CT-3240-H, 2016 WL 8674243, at *3 (E.D.N.C. Mar. 3, 2016) ("Possession of contraband within the prison facility creates a cognizable danger for both inmates and prison officials."), *aff'd sub nom. McMillan v. Jones*, 673 F. App'x 321 (4th Cir. 2017); *United States v. Mobley*, 687 F.3d 625, 631 (4th Cir. 2012) ("[T]he availability of contraband weapons in the prison context obviously facilitates violence and injury."); *United States v. Perez-Jiminez*, 654 F.3d 1136, 1143 (10th Cir. 2011) ("There is no legitimate purpose for a prisoner to carry a weapon designed to kill, injure or disable another. On the contrary, the only reason to carry such a weapon is to use it to attack another or to deter an attack.").

Ultimately, after considering the record evidence and viewing all reasonable inferences in the light most favorable to Plaintiff, *see Scott*, 550 U.S. at 378, the undersigned concludes that "no reasonable jury could find that [Defendants] applied force maliciously and sadistically for the very purpose of causing harm[.]" *Geddings*, 2018 WL 1626116, at *12. The Court should

therefore grant summary judgment in favor of Defendants as to Plaintiff's excessive force claim.[11]

## B. Supervisory Liability

Defendants next argue that Defendant Dean Locklear should be entitled to summary judgment as to any claim based on supervisory liability. (Docket Entry 54 at 16-18.) To prevail on this claim, Plaintiff would need to demonstrate "actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Carter v. Morris,* 164 F.3d 215, 221 (4th Cir. 1999) (quoting *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994)) (internal quotation marks omitted). Furthermore, "the conduct engaged in by the supervisor's subordinates must be 'pervasive,' meaning that the 'conduct is widespread, or at least has been used on several different occasions.'" *Randall,* 302 F.3d at 206. Also, deliberate indifference generally is not satisfied "by pointing to a single incident or isolated incidents" but rather showing a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (internal quotation marks and citation omitted).

---

[11] To the extent Plaintiff attributes liability to Defendants Clark and Bridges for failing to intervene, (*see* Am. Compl. at 15), such claims would also fail. *See Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002) (explaining that, "if a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly"); *Brandon Chrishon Polk v. Stanly Cnty.*, No. 1:22CV613, 2024 WL 1287372, at *11 (M.D.N.C. Feb. 23, 2024) ("[T]here is no underlying constitutional violation with regard to Defendant [officers'] encounter with Plaintiff. Therefore, bystander liability cannot attach, and Plaintiff's claim fails as a matter of law."), *report and recommendation adopted sub nom. Polk v. Stanly Cnty.*, No. 1:22CV613, 2024 WL 1286241 (M.D.N.C. Mar. 26, 2024); *Dodson v. Prince George's Cnty.*, No. CV JKS 13-2916, 2016 WL 67255, at *3 (D. Md. Jan. 6, 2016) ("[I]f no excessive force is applied by the fellow officer, the officer witnessing the conduct cannot be held liable under bystander liability for a failure to intervene." (internal quotations and citation omitted)).

Here, the undersigned need not resolve Defendants' argument. As explained above, Plaintiff's underlying excessive force claim implicating supervisory liability fails to establish a constitutional violation. "It is well settled that there can be no supervisory liability when there is no underlying violation of the Constitution." *Phillips v. Bailey*, 337 F. Supp. 2d 804, 807 (W.D. Va. 2004); *Williams v. Cullins*, No. 5:18-CT-3366-FL, 2022 WL 948083, at *5 (E.D.N.C. Mar. 29, 2022) ("Given the fact that there is no underlying constitutional violation, plaintiff's supervisor . . . claims against defendants . . . also lack merit."); *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 420 (4th Cir. 1996) (holding that absent an underlying constitutional violation, a supervisory claim under § 1983 also fails). Thus, any claim based upon supervisory liability fails as a matter of law.[12]

## C. Qualified Immunity

Alternatively, Defendants argue that they are entitled to qualified immunity. (Docket Entry 54 at 18-19.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step

---

[12] In any event, Plaintiff's claims toward Defendant Dean Locklear are conclusory and therefore would fail. *See Thompson*, 878 F.3d at 111 (affirming the grant of summary judgment on a supervisory liability claim where inmate "only makes conclusory allegations without any specific facts").

qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 547 (4th Cir. 2010) (citation omitted).

Here, Plaintiff has not demonstrated a violation of a constitutional right. Instead, the undisputed evidence illustrates that Defendants did not use excessive force during the June 2021 incident. Therefore, the undersigned concludes that Defendants are entitled to qualified immunity. *See Abney v. Coe,* 493 F.3d 412, 415 (4th Cir. 2007) (holding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there").

### D. Eleventh Amendment Immunity

Finally, Defendants argue that Plaintiff's claims against them in their official capacity should be dismissed as barred by the Eleventh Amendment. (Docket Entry 54 at 19-20.) The Eleventh Amendment prohibits actions in federal court by individuals against a state unless the state has consented to suit or unless Congress has lawfully abrogated the states' Eleventh Amendment immunity. *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003). The doctrine of sovereign immunity under the Eleventh Amendment applies not only to actions in which the State of North Carolina is a named defendant, but also to actions against its departments, institutions, and agencies. *DeMurry v. N.C. Dep't of Corr.*, 673 S.E.2d 374, 380-81 (N.C. Ct. App. 2009). Additionally, in North Carolina, "[a]ctions against officers of the State in their official capacities are actions against the State for the purposes of applying the doctrine of [sovereign] immunity." *Green v, Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010)

(citation omitted). Indeed, "[w]here [Section 1983's] provisions allow for suit against a 'person,' and in suits for money damages, neither the state nor a state agency is deemed a 'person,' [thus] this claim cannot be maintained by plaintiff against [the State]." *Savage v. N. Carolina Dep't of Corr.*, No. 5:06-CV-171-FL, 2007 WL 2904182, at *5 (E.D.N.C. Sept. 29, 2007). Additionally, compensatory and punitive damages are unavailable in official capacity suits under § 1983. *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

Here, to the extent Plaintiff has filed suit against Defendants in their official capacities, it would be against the NCDAC and the State of North Carolina. *Green*, 203 N.C. App. at 268, 690 S.E.2d at 762. Neither has consented nor waived immunity; therefore, any monetary claims against Defendants in their official capacities should be dismissed.[13] *Floyd v. N. Carolina Dep't of Corr.*, No. 1:11-CV-80-RJC, 2011 WL 1499669, at *2 (W.D.N.C. Apr. 19, 2011) ("[T]he Eleventh Amendment protects state employees acting in their official capacities from suits for damages.") (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989)); *Kelly v. Maryland*, 267 Fed. Appx. 209, 210 (4th Cir. 2008) (citation omitted) ("It is now well settled that a state cannot be sued under § 1983.").

## Plaintiff's Motions for Partial Summary Judgment

Plaintiff also moves for partial summary judgment as to the issue of liability on the part of Defendants' alleged use of excessive force and failure to intervene in this matter. (Docket

---

[13] Furthermore, to the extent prospective injunctive and declaratory relief is sought, (*see* Am. Compl. at 17-18), such is relief is moot as Plaintiff is no longer incarcerated at Scotland Correctional Institution. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there."). Moreover, having found no constitutional violation, an official capacity claim for injunctive relief also warrants dismissal. *McMillan*, 2016 WL 8674243, at *4.

Entries 46, 57.) As determined above and based on the facts in the light most favorable to Plaintiff, he has failed to establish a genuine issue of material fact and summary judgment should be granted in favor of Defendants. Therefore, Plaintiff's motions should be denied. *See Grady v. McPhearson*, No. 5:17-CT-3211-FL, 2020 WL 5821840, at *5 (E.D.N.C. Sept. 30, 2020) ("Because the court has determined that, based on facts in the light most favorable to plaintiff, he has failed to establish a genuine issue of material fact precluding summary judgment on his claims, plaintiff's motion for summary judgment must fail."), *aff'd sub nom. Grady v. McPherson*, 840 F. App'x 745 (4th Cir. 2021); *Polk*, 2024 WL 1287372, at *15 (concluding that defendants' summary judgment motion should be granted and plaintiff's cross motion be denied).

### III. CONCLUSION

For the reasons sated herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Leave to File Video Exhibit Manually (Docket Entry 55) is **GRANTED**.[14]

**IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 53) be **GRANTED**, Plaintiff's Motion for Partial Summary Judgment and "Plaintiff's Request to Grant Plaintiff's Motion for Partial Summary Judgment" (Docket Entries 46, 57) be **DENIED**, and this action be dismissed with prejudice.

                                 /s/  Joe L. Webster
                              United States Magistrate Judge


February 12, 2025
Durham, North Carolina

---

[14] As previously explained (*see supra* n.5), the video exhibit has already been received by the Court.

21